NO. 12-55479

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

SABRINA LAGUNA, CARLOS ACEVEDO and TERESA SALAS,
*individually and on behalf of all others similarly situated,*
*Plaintiffs-Appellees,*

AMRIT SINGH,
*Objector-Appellant,*

v.

COVERALL NORTH AMERICA, INC., ALLIED CAPITAL CORP., ARES
CAPITAL CORP., CNA HOLDING CORP., and TED ELLIOTT.
*Defendants-Appellees.*

---

On appeal from the United States District Court
for the Southern District of California, No. 3:09-cv-02131-JM-BGS

---

**PETITION FOR REHEARING *EN BANC***

Shannon Liss-Riordan
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
617-994-5800

*Attorney for Objector-Appellant Amrit Singh*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

I.   THE PANEL'S APPROACH CONFLICTS WITH OTHER
     DECISIONS OF THIS COURT....................................................6

II.  THIS CASE PRESENTS AN EXCEPTIONALLY IMPORTANT
     QUESTION OF FEDERAL LAW THAT WILL IMPACT A LARGE
     NUMBER OF ABSENT CLASS MEMBERS. ...........................13

CONCLUSION ..............................................................................15

## <u>TABLE OF AUTHORITIES</u>

### Cases

<u>Awuah v. Coverall</u>, C.A. No. 07-10287 (D. Mass. Sept. 16, 2013) ..........................3

<u>Baldwin & Flynn v. Nat'l Safety Assocs.</u>, 149 F.R.D. 598 (N.D.Cal.1993) .... 11, 12

<u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566 (9th Cir. 2004) .............. 1, 5, 10

<u>Dennis v. Kellogg Co.</u>, 697 F.3d 858 (9th Cir. 2012) ...................................... 1, 6, 7

<u>Dysthe v. Basic Research, L.L.C.</u>, 273 F.R.D. 625 (C.D. Cal. 2011) ....................11

<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011 (9th Cir. 1998)......................................13

<u>In re Bluetooth Headset Products Liab. Litig.</u>, 654 F.3d 935
    (9th Cir. 2011)................................................................................................ passim

<u>In re Mego Fin. Corp.</u>, 213 F.3d 454 (9th Cir. 2000) ..............................................10

<u>In re Washington Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291
    (9th Cir. 1994)........................................................................................................13

<u>Laguna v. Coverall N. Am., Inc.</u>, 2012 WL 607622 (S.D. Cal. Feb. 23, 2012)........8

<u>Laguna v. Coverall North America, Inc.</u>, 2014 WL 2465049
    (9th Cir. June 3, 2014) ................................................................................... passim

<u>Reynolds v. Beneficial Nat. Bank</u>, 288 F.3d 277 (7th Cir. 2002) ............................7

<u>Staton v. Boeing Co.</u>, 327 F.3d 938 (9th Cir. 2003)................................... 1, 6, 7, 14

<u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043 (9th Cir. 2002)..................................13

<u>Withers v. eHarmony, Inc.</u>, 267 F.R.D. 316 (C.D. Cal. 2010) ......................... 12, 15

## Other Authorities

Brian T. Fitzpatrick, <u>The End of Objector Blackmail?</u>,
  62 VAND. L. REV. 1623 (2009).........................................................................15

**INTRODUCTION**

Objector-Appellant Amrit Singh urges the Court to grant this petition for rehearing *en banc* because this case raises important issues regarding the standard to be applied by courts in approving class settlements, particularly settlements in which the benefit to the class is claimed to be substantially non-monetary. Moreover, the majority panel decision conflicts with prior decisions of this Court, including In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935 (9th Cir. 2011), Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012), and Staton v. Boeing Co., 327 F.3d 938, 973-74 (9th Cir. 2003). The panel decision in this case affirmed the district court's approval of a class settlement despite a total lack of factual findings regarding the "amount offered in settlement," Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004), and despite a failure to specifically consider the three Bluetooth "warning signs." 654 F.3d at 947. Moreover, the panel found that the district court was not required to "assign a monetary value to purely injunctive relief," Laguna v. Coverall North America, Inc., 2014 WL 2465049, *4 (9th Cir. June 3, 2014), despite the existence of a "clearly measurable benefit" to class members. Staton, 327 F.3d at 973. As the dissenting judge highlighted in his opinion, "this case affords this Court an opportunity to provide additional guidance

1

to the district courts in their assessment of proposed class action settlements." Laguna, 2014 WL 2465049, *7 (Chen, J. dissenting).

The case involved allegations raised against Defendants (collectively known as "Coverall"), a janitorial company, that was alleged to have misclassified its cleaning workers as independent contractor "franchisees", requiring them to pay substantial fees in order to perform cleaning work (in the form of "franchise fees" and "additional business fees"), and taking numerous deductions from their pay (including payments for insurance and other business expenses). In addition to the independent contractor misclassification, Plaintiffs had alleged that Coverall engaged in a number of deceptive practices with respect to these cleaning workers.

Objector-Appellant Singh seeks rehearing *en banc* and reversal of the district court's approval of the settlement in this case in which class members were to receive in total just $56,525, while the attorneys would receive approximately eighteen times this amount, close to $1 million. In order to justify this gross disparity, the parties contended that the primary benefit to the class was in the form of non-monetary relief. However, over the objection of Singh, the district court refused to inquire as to the portion of the class that would even be eligible for this non-monetary relief. The court also accepted at face value the parties' contention that the non-monetary portions of the settlement would provide meaningful relief

2

to class members, without evaluating Singh's contention that the alleged non-monetary relief had no real value for class members.

The settlement ultimately approved by the district court provided for $56,525 in cash to only 119 of 807 "former workers" of Coverall, but provided close to $1 million to the plaintiffs' attorneys, while offering questionable and undefined "non-monetary" benefits to an unknown number of "current workers."[1]

---

[1]     The settlement awarded monetary compensation only to <u>former</u> Coverall workers of $475, and only if they filed a claim form within a 45-day deadline. In addition, these former workers were eligible to receive a coupon, or credit, of $750 toward a new purchase of a so-called "franchise" from Coverall. Only 119 former workers filed claim forms, and only 34 workers expressed an interest in possibly using the coupon at some point in the future, meaning only $56,525 in total would be paid in cash to class members. (Notably, in contrast, in a case raising practically identical claims against Coverall (under Massachusetts law), where the workers have prevailed and judgment has entered in their favor, the judgment amounts for individual class members have largely been in the tens of thousands of dollars, with some class members receiving judgments of more than $100,000. <u>See</u> <u>Awuah v. Coverall</u>, C.A. No. 07-10287 (D. Mass. Sept. 16, 2013)).

Those class members who still <u>currently</u> worked for Coverall were not eligible for *any* monetary compensation and instead were to receive the so-called benefit of having their cleaning accounts "assigned" to them. However, despite an extremely detailed settlement agreement setting forth protections to Coverall, the agreement was conspicuously lacking <u>any</u> definition, or explanation, of what "assignment" actually constituted. Moreover, despite the alleged (but undefined) "assignment" that these workers would receive, the agreement still allowed Coverall to unilaterally take cleaning accounts away from workers (which was one of the primary practices that Plaintiffs had challenged in the case). Not only was the "assignment" left undefined in the agreement, but it was also limited to class members who had finished paying off their franchise fees to Coverall. As the Objector pointed out to the district court, since many Coverall workers never fully pay off their debts to Coverall for these fees (as they frequently lose all of their

3

Class member Amrit Singh objected to the settlement, as well as to the requirement that he be deposed in order to object. However, on December 9, 2011, over his objection, the court ordered Singh to sit for a deposition (that served no purpose other than to attempt to deter Singh from pursuing his objection) and on February 23, 2012, the district court approved the settlement, despite the presence of all three <u>Bluetooth</u> factors, and despite the absence of critical information regarding how many class members were actually eligible for the alleged "non-monetary" benefits in the suit and what actually comprised these alleged benefits.

Ninth Circuit law requires that courts consider the "amount offered in settlement" as one of eight enumerated factors to be considered in determining whether a class action settlement should be approved.  <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004). [2]  However, this Court has also held

---

cleaning accounts, or quit, before paying off the fees), this limitations could well have limited the alleged non-monetary benefit of "assignment" to just a fraction of the class.  However, despite Objector's entreaties for this information, Coverall did not provide (nor did the court request that it provide) information regarding the number of class members who had paid off their franchise fees to Coverall and thus would actually be eligible for the purported "assignment" of accounts.

[2]     The eight factors include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

that where "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight Churchill factors alone is not enough to survive appellate review…[because] there is an even greater potential for a breach of fiduciary duty owed the class during settlement." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (emphasis in original). Accordingly, courts in the Ninth Circuit must also specifically consider three additional factors to determine that pre-certification settlement agreements are free from collusion:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class . . . and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

Bluetooth , 654 at 947 (internal citations omitted).

Despite the requirement that courts explicitly consider the "amount offered in settlement," Churchill, 361 F.3d at 575, and the three Bluetooth "warning signs," the panel decision in this case affirmed the district court's approval of the settlement even though the district court made no factual findings regarding the

---

participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

"amount offered in settlement" or whether counsel would "receive a disproportionate distribution of the settlement." <u>Bluetooth</u>, 654 F.3d at 947. Furthermore, the panel decision found that "assign[ing] monetary value to purely injunctive relief," was not required, <u>Laguna</u>, 2014 WL 2465049, *4, despite other precedents clearly establishing that valuation should be undertaken when there is a "clearly measurable benefit" to class members. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 973-74 (9th Cir. 2003); <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 868 (9th Cir. 2012) (noting the danger of attorneys "assigning a dollar number to the fund that is fictitious" and finding that "[t]o approve this settlement despite its opacity would be to abdicate our responsibility to be 'particularly vigilant' of pre-certification class action settlements").

    As described further below, the panel's decision was erroneous and should be reversed for two primary reasons: (1) the panel's approach conflicts with past Ninth Circuit decisions, and (2) the logic of the decision would lead to destructive and inconsistent policy results in an area of exceptional importance.

## I.    THE PANEL'S APPROACH CONFLICTS WITH OTHER DECISIONS OF THIS COURT.

    The panel applied the wrong standard in finding that the district court's approval of the class action settlement here was justified.  First, the panel found that the district court's failure to make factual findings regarding "the amount

offered in settlement" was justified because "we have never required a district court to assign a monetary value to purely injunctive relief." Laguna, 2014 WL 2465049, *4. However, other decisions of this Court make clear that the value of injunctive or equitable relief should be considered when there is a "clearly measurable benefit" to class members. Staton v. Boeing Co., 327 F.3d 938, 973-74 (9th Cir. 2003); Dennis v. Kellogg Co., 697 F.3d 858, 868 (9th Cir. 2012); see also Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 284 (7th Cir. 2002) (finding that the "judge should have made a greater effort (he made none) to quantify the net expected value of continued litigation to the class," and noting that "no one has attempted to monetize . . . the injunctive relief . . . which is barely discussed in the briefs or by the judge"). The dissent in this case wisely recognized as much, noting that "while it is true that equitable relief sometimes is not capable of quantitative valuation . . . where that relief has some calculable monetary value and is central to the relief obtained, some meaningful effort should be made to determine the amount offered in settlement." Laguna, 2014 WL 2465049, *10 (Chen, J. dissenting). In this case, the "assignment" of accounts is perfectly "capable of quantitative valuation, even if that value cannot be precisely determined," Id. at *11, but the court made no effort to monetize this relief and did not even demand

that the parties provide the number of class members who would be eligible to receive the alleged "non-monetary" benefit.

Indeed, under Ninth Circuit precedent, the duty to inquire into the value of non-monetary relief is further heightened in the pre-certification context, and where the three <u>Bluetooth</u> "warning signs" are present. Given the fact that this pre-certification settlement had all three warning signs set forth in <u>Bluetooth</u>, the district court was under a special obligation to prod into the value of the settlement—in particular its non-monetary terms—and to support its approval of the settlement "by a clear explanation of why the disproportionate fee is justified." <u>Bluetooth,</u> 654 F.3d at 949. However, as the district court's own Order reflects, the court did not actually inquire into value of the non-monetary terms of the settlement at all. The court merely found that the parties' naked assertion of that the value of the settlement was $20 million was doubtful, but assumed that "even if the cash settlement, the assignment of accounts, and the pledged programmatic changes in the settlement were worth only about $4 million, the requested fee award would fit within normal bounds of class action recovery." <u>Laguna v. Coverall N. Am., Inc.</u>, 2012 WL 607622 at *6 (S.D. Cal. Feb. 23, 2012).

None of these findings amount to an actual finding on the value of the non-monetary benefits to the class, and it is not at all clear that the $4 million figure

8

assumed by the district court is remotely justified.  In fact, "there is nothing in the record upon which the district court could have based an assumption that the benefits of the settlement could be worth $4 million." Laguna, 2014 WL 2465049, *15 (Chen, J. dissenting). By accepting the district court's approval of the settlement, the panel opinion compounded the error and plainly contradicted the dictates of Bluetooth and Staton.

In fact, this settlement bears a strong resemblance to the one at issue in Bluetooth, because here, as in Bluetooth, the court made "no comparison between the settlement's attorneys' fees award and the benefit to the class or degree of success in the litigation," and therefore, its comparison "between the lodestar amount and a reasonable percentage award" was erroneous.  Bluetooth, 654 F.3d at 943 (noting that "[o]n this record we lack a sufficient basis for determining the reasonableness of the award").

Secondly, the panel opinion applied the wrong standard when it concluded that "[t]he district court's analysis [of the Bluetooth factors]…was adequate." Laguna, 2014 WL 2465049, *5.  In the pre-certification context, the Ninth Circuit has held that the "district court's approval order must show not only that it has explored the Churchill factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d 935,

9

947 (quoting <u>In re Mego Fin. Corp.</u>, 213 F.3d a454, 458 (9th Cir. 2000)). However, in this case, the panel erroneously failed to require the district court to address all three <u>Bluetooth</u> factors. The panel wrongly concluded that "[t]he first [<u>Bluetooth</u>] warning sign was not present because the district court correctly concluded that the attorneys' fee award was entirely reasonable." <u>Laguna</u>, 2014 WL 2465049, *5. However, there is no way that the district court or the panel could find that the attorneys' fee award was reasonable without first determining whether "the amount offered in settlement" was reasonable. <u>Churchill</u>, 361 F.3d at 575. Indeed, the structure of the panel's opinion, which analyzes the propriety of the fee award before turning to the settlement itself, masks this obvious fact: without determining "the amount offered in settlement," there can be no meaningful analysis of the first <u>Bluetooth</u> factor, whether "counsel receive[d] a disproportionate distribution of the settlement." <u>Bluetooth</u>, 654 F.3d at 947.

As the dissent recognized, "two of the three Bluetooth factors were clearly met (i.e., the clear sailing and reverter arrangements)" and "[w]ithout a full record as to the value of the settlement, the district court could not ensure that the fee award was not disproportionate compared to the benefits to the class as required by the third <u>Bluetooth</u> factor." <u>Laguna</u>, 2014 WL 2465049, *15 (Chen, J. dissenting). Indeed, "[t]he factor that is missing from the calculus (and missing from the

10

record) is the number or percentage of current franchisees who actually will or at least will likely receive the benefit [of the settlement]." Id. at *11 (Chen, J. dissenting).  Without this crucial information about how many people are eligible to receive the benefit, there was simply no factual basis in the record to determine the amount of the settlement, or whether counsel received "a disproportionate distribution of the settlement." Bluetooth, 654 F.3d at 947.  The panel opinion applied the incorrect standard by not requiring the district court to specifically address the presence of the three warning signs, and make findings as to the measurable value of the non-monetary settlement.

Finally, the panel applied the wrong standard when it summarily approved the district court's decision to allow Mr. Singh to be deposed.  The settlement agreement's requirement that objectors be deposed was a clear attempt to deter objectors. Parties to a class action may seek discovery from absent class members only upon a showing "discovery is both necessary and for a purpose other than taking undue advantage of class members." Dysthe v. Basic Research, L.L.C., 273 F.R.D. 625, 628 (C.D. Cal. 2011) (citing Baldwin & Flynn v. Nat'l Safety Assocs., 149 F.R.D. 598, 600 (N.D.Cal.1993)). In addition, although the court has discretion in deciding whether to allow depositions to be taken or not, given presence of the three Bluetooth "warning signs," and the evidence that class

11

members' interests had been compromised, the court had a heightened obligation to at least make a finding that depositions of objectors were not only justified, but also were not contributing to curtail any real scrutiny of the settlement. See In re Bluetooth, 654 F.3d 948 (heightened obligation to protect absent class members when signs of self-dealing are present); Withers v. eHarmony, Inc., 267 F.R.D. 316, 320 (C.D. Cal. 2010) (relying on Baldwin, 149 F.R.D. at 600 ("the party seeking the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members")).

Here, by failing to consider or make findings on the issue of necessity for a deposition and on whether the deposition was designed to chill or take undue advantage of unnamed class members, the district court did not apply the correct legal standard—or any standard—for approving the provision of the settlement agreement, requiring Mr. Singh be deposed. Yet the panel's decision erroneously concluded that "the district court considered the totality of the circumstances when it concluded that a deposition of Singh was appropriate." The panel opinion applied the wrong standard and should be revisited.

## II.  THIS CASE PRESENTS AN EXCEPTIONALLY IMPORTANT QUESTION OF FEDERAL LAW THAT WILL IMPACT A LARGE NUMBER OF ABSENT CLASS MEMBERS.

Finally, review *en banc* is warranted here because this case presents an important question of federal law – what is the standard for approval of class settlements, where the claimed benefit to the class is substantially non-monetary and the three <u>Bluetooth</u> warning signs are present?  A wide variety of state consumer protection and employment lawsuits proceed as class actions, and class members are often absent and unable to police the fairness of class action settlements.  Indeed, the Ninth Circuit has "long recognized that settlement class actions present unique due process concerns for absent class members." <u>Bluetooth</u>, 654 F.3d at 946 (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In fact, the Ninth Circuit has found that "in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage" and therefore "when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1052 (9th Cir. 2002) (quoting <u>In re Washington Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1302 (9th Cir. 1994)).  The standard applied to approving class action settlements will affect a

13

large number of cases and individuals and goes to the very heart of the fairness and legitimacy of the legal process.

The panel opinion undermines the court's "special duty to protect the interests of the class" by allowing the court to "abdicat[e] its responsibility to . . . carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" where the claimed benefit is non-monetary in nature. Staton v. Boeing Co., 327 F.3d at 963.  Indeed, the panel opinion gave no consideration to the fact that the non-monetary relief here was "clearly measurable," and disregarded the district court's failure to explicitly consider the three Bluetooth "warning signs," all of which were present in this case. Id. at 973.  In a pre-certification case where the three Bluetooth factors are present, it was error to permit a district court to approve a settlement without making specific findings as to "the amount offered in settlement," and the value of measurable non-monetary relief.  The court should take up this critically important issue and clarify the applicable standard in such cases.  As the dissent acknowledged:

> The district court's task in cases such as this could be made more manageable were this Court to provide more specific guidance on: (1) the centrality of the Lane/Churchill factor "the amount offered in settlement" in assessing the adequacy of class action settlements, and (2) the explicit inclusion as a factor in Bluetooth the unjustified use of a claims process and/or reverter of unclaimed class funds back to the defendant—particularly if Williams continues to allow fees to be based on size of the potential class

14

fund rather than actual pay-out to the class. This case affords the Court an opportunity to provide that clarity.

Laguna, 2014 WL 2465049, *16 (Chen, J. dissenting).

Furthermore, because absent class members are so vulnerable to being bound by unfair and collusive settlements, the court should have discharged its duty to protect the interests of the unnamed class members by ensuring that there were no undue burdens to objecting, such as the provision of the settlement agreement requiring depositions of objectors.  "Indeed, given that class counsel and defendants by definition support class action settlements, objectors typically provide the only adversarial testing of class action settlements," and practices which deter them are harmful to class members as a whole. See Brian T. Fitzpatrick, The End of Objector Blackmail?, 62 VAND. L. REV. 1623, 1638 (2009).  Thus, this Court should clarify that courts must at least make some findings regarding the fairness of the pre-requisites imposed on potential objectors, and whether the parties have shown "necessity and absence of any motive to take undue advantage of the class members." Withers, 267 F.R.D. at 320.

## CONCLUSION

For the foregoing reasons, the petition for rehearing *en banc* should be granted. This case "affords the Court an opportunity to provide additional guidance to the district courts in their assessment of proposed class action settlements," and

15

to assure uniform consideration of this exceptionally important issue. <u>Laguna</u>, 2014 WL 2465049, *16 (Chen, J. dissenting).  Here, the district court abused its discretion by failing to make any findings regarding the "non-monetary value" of the settlement and failing to request crucial information regarding the "assignment" of accounts and an accounting of the number of class members who would even be eligible to receive this purported benefit.  The panel opinion erroneously found that the district court's approval of the settlement was not an abuse of discretion even though it provided vastly greater attorneys' fees to class counsel ($994,800) than the nominal cash benefit to the class ($56,525).  The Court should grant re-hearing en banc and seize the "opportunity to provide additional guidance to the district courts." <u>Id.</u>

Dated:  June 17, 2014                    /s/ Shannon Liss-Riordan

Shannon Liss-Riordan, Esq.
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
617-994-5800
sliss@llrlaw.com

*Attorney for Appellant-Objector
Amrit Singh*

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for rehearing en banc is:

 (1) Proportionately spaced, has a typeface of 14 points or more and contains 3,848 words (petitions and answers must not exceed 4,200 words).


Dated:  June 17, 2014                  /s/ Shannon Liss-Riordan

                                  Shannon Liss-Riordan, Esq.
                                  LICHTEN & LISS-RIORDAN, P.C.
                                  100 Cambridge Street, 20th Floor
                                  Boston, MA 02114
                                  617-994-5800
                                  sliss@llrlaw.com

                                  *Attorney for Appellant-Objector*
                                  *Amrit Singh*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2014, I caused the foregoing document to be filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of this filing to all counsel of record.


Dated:  June 17, 2014                            /s/ Shannon Liss-Riordan

Shannon Liss-Riordan, Esq.
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
617-994-5800
sliss@llrlaw.com

*Attorney for Appellant-Objector Amrit Singh*

18