NO. 12-55479

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SABRINA LAGUNA, *et al.*,
*Plaintiffs-Appellees,*

v.

AMRIT SINGH,
*Objectors-Appellant,*

v.

COVERALL NORTH AMERICA, INC., *et al.*,
*Defendant-Appellees.*

On Appeal from the United States District Court
for the Southern District of California, No. 3:09-cv-02131-JM-BGS

Brief of Center for Class Action Fairness
as *Amicus Curiae* in Support of Petition for Rehearing *En Banc*

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Adam E. Schulman
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*Attorneys for Amicus Curiae*
*Center for Class Action Fairness*

## Rule 26.1 Corporate Disclosure Statement

*Amicus curiae* Center for Class Action Fairness is an IRS 501(c)(3) non-profit corporation incorporated under the laws of Virginia with its principal place of business in Washington, D.C. It does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole. The corporation is operated by a volunteer Board of Directors.

This Court's Order of August 8 granted leave under FRAP 29(a) for "any person or entity wishing to file a brief as an amicus curiae in response to this order."

# Table of Contents

Rule 26.1 Corporate Disclosure Statement ........................................................i

Table of Contents ...............................................................................................ii

Table of Authorities ..........................................................................................iii

Interest of Amicus Curiae .................................................................................1

Summary of Argument .......................................................................................1

I.     Without any acknowledgment of competing law, the panel decision creates an inter-circuit split regarding the valuation of settlement relief. ..............3

     A.     Unfair allocation is a problem for settlement fairness even in the absence of explicit collusion...........................................................3

     B.     Until *Laguna*, every other Circuit to directly consider the issue required settling parties to meet the burden of demonstrating valuation of quantifiable settlement relief. .....................................6

II.     This Court should grant *en banc* rehearing *sua sponte* notwithstanding the withdrawal of the petition. ..........................................................................12

III.     At a minimum, this Court should vacate the panel opinion. ................................15

Conclusion.........................................................................................................15

Certificate of Compliance with Fed. R. App. 32(a)(7)(C) and Circuit Rule 29-2 .........17

Proof of Service ................................................................................................18

# Table of Authorities

<u>Cases</u>

*Albers v. Eli Lilly & Co.,*
    354 F.3d 644 (7th Cir. 2004) (*per curiam*) ...............................................13

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,*
    743 F.3d 243 (7th Cir. 2014) ...................................................... 12-13

*Animal Legal Def. Fund v. Veneman,*
    490 F.3d 725 (9th Cir. 2007) ...............................................................15

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013)............................................... 1, 5, 9-10, 12

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935, 2011 U.S. App. LEXIS 17224 (9th Cir. 2011) ...................1, 3-4, 11

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) .................................................... 5, 11

*Dewey v. Volkswagen AG,*
    681 F.3d 170 (3d Cir. 2013).......................................................................2

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980) .............................................................14-15

*In re Dry Max Pampers Litig.,*
    724 F.3d 713 (6th Cir. 2013) ................................................. 1, 3-10, 12

*Eubank v. Pella Corp.,*
    753 F.3d 716 (7th Cir. 2014) ..............................................3-5, 8-12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) .........................................................10

*In re HP Inkjet Printer Litig.,*
    No. 11-16097 (9th Cir. 2013) .................................................. 1, 5, 10-11

*Kalan v. City of St. Francis,*
    274 F.3d 1150 (7th Cir. 2001) .............................................14-15

*Laguna v. Coverall N.A., Inc.,*
   753 F.3d 718 (9th Cir. 2014) ........................................................................*passim*

*In re Pattullo,*
   271 F.3d 898 (9th Cir. 2001) ........................................................................15

*Piambino v. Bailey,*
   757 F.2d 1112 (11th Cir. 1985) ...................................................................4

*Pitts v. Terrible Herbst, Inc.,*
   653 F.3d 1081 (9th Cir. 2011) ....................................................................14

*Preblich v. Battley,*
   181 F.3d 1048 (9th Cir. 1999) ....................................................................15

*Safeco Ins. Co. of Am., Inc. v. AIG, Inc.,*
   710 F.3d 754 (7th Cir. 2013) .................................................................13-14

*Shellman v. United States Lines, Inc.,*
   528 F.2d 675 (9th Cir. 1975) ......................................................................12

*Sosna v. Iowa,*
   419 U.S. 393 (1975) ....................................................................................14

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ......................................................................11

*Suntharalinkam v. Keisler,*
   506 F.3d 822 (9th Cir. 2007) ......................................................................13

*Thompson v. Calderon,*
   151 F.3d 918 (9th Cir. 1998) ......................................................................12

*Thorogood v. Sears, Roebuck, & Co.,*
   627 F.3d 289 (7th Cir. 2010) (denying rehearing *en banc*),
   *underlying opinion rev'd on other grounds,* 131 S.Ct. 3060 (2011) ...................3

*Triestman v. United States,*
   124 F.3d 361 (2nd Cir. 1997) .....................................................................12

*United States v. Brackeen,*
   969 F.2d 827 (9th Cir. 1992) ......................................................................12

*United States v. Kaczynski*,
    416 F.3d 971 (9th Cir. 2005) ...................................15

*United States v. Washington*,
    593 F.3d 790 (9th Cir. 2010) ...................................12

*United States Bancorp Mortg. Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994)...................................15

Rules and Statutes

28 U.S.C. §1712...................................5

Cir. R. 35-1 ...................................3

Fed. R. App. Proc. 35(b)(1)(B) ...................................3

Fed. R. App. Proc. 42(b) ...................................12

Fed. R. Civ. Proc. 23(a)(4)...................................2

Fed. R. Civ. Proc. 23(e) ...................................5, 11, 13

Other Authorities

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05, *comment b*
    (2010) ...................................7

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05(c) (2010)...................................7

Fitzpatrick, Brian T., *The End of Objector Blackmail?*,
    62 VAND. L. REV. 1623 (2009)...................................15

Liptak, Adam, *When Lawyers Cut Their Clients Out of the Deal*,
    N.Y. TIMES, Aug. 13, 2013, at A12 ...................................1

## Interest of Amicus Curiae

The Center for Class Action Fairness ("CCAF") is a 501(c)(3) non-profit public-interest law firm. It is recognized as "the leading critic of abusive class action settlements." Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12. CCAF attorneys have won numerous appeals, including four out of four argued and decided in the Ninth Circuit, many of them landmark published decisions in support of the principles that settlement fairness requires that the primary beneficiary of a class-action settlement should be the class, rather than the attorneys or third parties; and that courts scrutinizing settlements should value them based on what the class actually receives, rather than on illusory measures of relief. *E.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).

## Summary of Argument

In a 2-1 decision, this Court affirmed a settlement approval where the attorneys would receive just under $1 million; "former workers" would receive $56,625 in cash; and some, but not all, "current workers" would receive injunctive relief of disputed value. *Laguna v. Coverall N.A., Inc.*, 753 F.3d 718 (9th Cir. 2014); *id.* at 927 (Chen, J., dissenting). Many class members neither qualified for the cash component nor the injunctive component of the settlement; the "record is silent" on how many in the class would receive nothing. *Id.* at 927, 930-33.

Objector Singh petitioned this Court to rehear this case *en banc* on two grounds:

the panel's approach conflicts with other decisions of this Court (OP6-12) and this case presents an exceptionally important question of federal law (OP13-15).[1] CCAF concurs that both grounds merit granting the petition. This brief expands upon the second ground. The issue of whether a district court is required to investigate the supposed value of a settlement is not just "exceptionally important" by itself as Singh argues, but also because the panel opinion creates a circuit split with the Third, Sixth, and Seventh Circuits without any acknowledgment of competing law.

Though Singh has withdrawn his petition and has apparently settled his claims, this Court's rules permit *sua sponte* rehearing *en banc*, and the Court has the general power to deny a motion to withdraw an appeal. The Court should exercise that discretion here. Given courts' special duties to absent class members, there is a much stronger case for going forward than in previous cases where this Court has done so. This is especially true given that the absent class members are relatively unsophisticated with relatively small claims at stake here. For the same reason class members need the procedural mechanism of class actions to make it feasible to vindicate individual claims too small to litigate individually, individual class members aggrieved by an unfair settlement allocation have even less incentive to expend legal

---

[1] "OP" refers to objector Singh's petition for rehearing *en banc*.

Because there was an uncertified subclass of "current franchisees who have not completed payment of franchise fees" that will receive only remote contingent relief under the settlement but was not separately represented, the settlement class should not have been certified. Fed. R. Civ. P. 23(a)(4); *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2013). There seems to have been no objection to this settlement flaw. The *amicus* will thus focus on the potentially unfair settlement allocation.

resources to vindicate the interests of the class at large. At a minimum, the Court should vacate the panel opinion to avoid the intra- and inter-circuit split.

## I. Without any acknowledgment of competing law, the panel decision creates an inter-circuit split regarding the valuation of settlement relief.

Grounds for *en banc* review exist as "a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue." Fed. R. App. Proc. 35(b)(1)(B); *accord* Cir. R. 35-1. The panel opinion's deference to a district-court finding unsupported by quantifiable facts within the parties' possession conflicts with decisions of the Third, Sixth, and Seventh Circuits without distinguishing, or even mentioning, those cases.

### A. Unfair allocation is a problem for settlement fairness even in the absence of explicit collusion.

There is an inherent conflict of interest between class counsel and the class, as every dollar reserved to the class in a settlement is a dollar that the defendant will be unwilling to pay to class counsel. The "structure of class actions … gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members, while [defendants have] an incentive to agree to early settlement that may treat the class action lawyers better than the class." *Thorogood v. Sears, Roebuck, & Co.*, 627 F.3d 289, 293 (7th Cir. 2010) (denying rehearing *en banc*), *underlying opinion rev'd on other grounds*, 131 S.Ct. 3060 (2011); *accord Bluetooth,* 654 F.3d at 946; *Eubank v. Pella Corp.*, 753 F.3d 716, 719-20 (7th Cir. 2014). Thus, to be approved, a settlement may not give "preferential treatment" to class counsel: "Such inequities in

treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718.

Both the district court and the panel opinion gave strong deference to the decision of the settling parties because of a lack of explicit collusion. *Laguna*, 753 F.3d at 924. But arms-length negotiations between class counsel and defendants provide minimal protection for absent class members; lack of collusion is necessary, but not sufficient, to protect the class. The "adversarial process … extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717. Thus, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (internal quotations and citations omitted); *Eubank*, 753 F.3d at 720; *Pampers*, 724 F.3d at 717-18; *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir. 1985). A "one-sided[]" settlement can be unfair even without a finding of collusion, and judicial review should include that objective inquiry into settlement value. *Eubank*, 753 F.3d 718, 727, 729.

The primary way that class attorneys self-deal to maximize their fees at the expense of the class is by creating the illusion of relief. For example, if attorney Lionel

Hutz settled the fictional class action of *Simpson v. The Frying Dutchman Restaurant* with a straightforward common-fund cash settlement that paid attorneys $2 million and class members $200,000, few judges would approve it, and those that would would risk reversal for the disproportion. *E.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (class counsel receiving 38.9% of settlement benefit "clearly excessive"). But if instead, the parties settled the case by issuing coupons with face-value of $10 million to the class with the same $2 million attorney award, a judge might be deceived into thinking the settlement allocation fair—even though (because so few coupons in coupon settlements are actually redeemed) the economic effect to the defendant and benefit to the class is about the same $200,000 as the transparently objectionable settlement. "[P]aying the class members in coupons masks the relative payment of the class counsel as compared to the amount of money actually received by the class members." *HP Inkjet*, 716 F.3d at 1179 (internal quotation omitted).

28 U.S.C. § 1712 put a statutory stop to the most abusive coupon settlement practices. *Id.* But class counsel can obtain the same abusive result by other means of creating the illusion of relief: for example, an injunction that doesn't actually benefit class members (*Pampers*) or a claims process so burdensome that there are few direct payments to the class (*Eubank; Baby Products*). Thus, Rule 23(e) requires "intense judicial scrutiny of proposed class action settlements." *Eubank*, 753 F.3d at 721; *accord Pampers*, 724 F.3d at 717-18. The district court did not engage in that scrutiny here, and failed to quantify readily quantifiable but undisclosed information within the possession of the settling parties, who had the burden of proving settlement fairness. *Laguna*, 753 F.3d at 929, 932 (Chen, J., dissenting). That failure is reversible error

under Third, Sixth, and Seventh Circuit law—but the panel opinion held otherwise.

**B.  Other than *Laguna*, every other Circuit to directly consider the issue required settling parties to meet the burden of demonstrating valuation of quantifiable settlement relief.**

The panel held that a "district court has no obligation to make explicit monetary valuations of injunctive remedies" even when discrete facts are available to the parties that would quantify that value. *Laguna*, 753 F.3d at 924. The dissent countered that "where that relief has some calculable monetary value and is central to the relief obtained, some meaningful effort should be made to determine the amount offered in settlement." *Id.* at 932 (Chen, J., dissenting) (internal quotation omitted). The dissent reasoned "the district court had a duty to ensure that th[e] benefit had real value. Notably, the burden of proving that the assignment had real value lay with the settling parties; it was not [objector's] burden to disprove it." *Id.* at 929 (citing *Pampers*). Although franchisees here are not eligible for injunctive relief unless they have paid their fees in full, "the record contains no information as to how many or what percentage of franchise owners have paid their fees in full" despite the objector's requests for such information. *Id.* at 930. The dissent would have required the district court to make such findings so it could properly analyze the "critical factor: the amount offered in settlement." *Id.* at 928.

The dissent is correct. The panel opinion created an unnecessary circuit split in two ways. All published opinions in recent years to directly consider the question have demanded scrutiny of what class members will *actually* receive in a settlement, not merely just what the settling parties say they might hypothetically receive. *See also*

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment* b at 208 (2010) ("*ALI Principles*") ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns"). And every other circuit's published opinions puts the burden of proving settlement fairness upon the moving parties. *Accord ALI Principles* § 3.05(c) (2010). The panel opinion neglects these precedents.

Take for example *Pampers*, a class settlement arising out of claims that the Procter & Gamble brand's technology caused infant diaper rash. The primary component of the settlement was injunctive relief reinstating a refund program. 724 F.3d at 718-19. As in this case, the objector complained that the injunctive relief was illusory—in *Pampers* because class members would be unlikely to satisfy the refund process's requirements of parents to retain years-old diaper boxes' UPC codes and receipts. *Id.* at 718. Because the program previously existed, the defendant possessed data regarding the number of refunds that had been issued under that program's first iteration. But "even after [the objector] called out the parties on this very point in his objections to the district court—[the defendant] chose not to provide that data in arguing the settlement is fair." *Id.* at 719. The Sixth Circuit held that as a matter of law "[t]he burden of proving the fairness of the settlement is on the proponents." *Id.* at 719 (citing authorities). In failing to provide the available data, the settlement proponents "did not carry [their] burden" and thus, the Sixth Circuit was obliged to draw the adverse inference from common sense that the "value of the refund program to unnamed class members is negligible," and reversed settlement approval because of the misallocation. *Id.* In contrast, *Laguna*'s valuation methodology would

result in affirmance: the *Pampers* parties could "value" the injunction by assuming two million class members could request $30 refunds, making it "worth" $60 million; even one fifth of that $60 million would have justified the $2.7 million *Pampers* fee. But one fifth of a fictional number is still a fictional number. *Compare Laguna*, 753 F.3d at 937 (maybe $20 million is wrong, but even $4 million would be ok).

The Seventh Circuit went even farther in *Eubank*, decided the day before *Laguna*. On the basis of an expert report calculating the hypothetical maximum number of claims that could be made, the district court found that the settlement relief was worth $90 million, and concluded that the settlement and its $11 million attorney award was thus fair. 753 F.3d at 723. But *Eubank* criticized the district court for failing to look at the number of claims that would actually be made and succeed: "without such an estimate no responsible prediction of the value of the settlement to the members of the class could be made." *Id.* Because there were only twelve thousand or so claims, because Pella had the power to contest claims in the claims process through arbitration and a class member's failure to satisfy the "arcane" claims process, and because awards were capped at a low level, the Seventh Circuit, using "generous assumptions," found that the class "could not expect to receive more than" $8.5 million, rather than the $22.5 or $90 million the settling parties suggested. *Id.* at 724-27. The resulting "one-sidedness" where class counsel would receive "56 percent" of the settlement benefit, was one of "multiple grounds" for reversal. *Id.* at 723, 726, 727, 729. The district court here made the same errors criticized by the Seventh Circuit by simply assuming benefit (*Laguna*, 753 F.3d at 922) instead of making a reasonable quantification of what the class would actually receive under the injunctive

relief. *Eubank* reversed even though appellees "argue[d] that the objectors did not present an expert witness to support their estimate of the value of the litigation." 753 F.3d at 728. *Laguna* shifts the burden, and would have reached the opposite result: the *Eubank* settlement proponents, unlike the settling parties here, put forward actual (if exaggerated) data.

In the Third Circuit's *Baby Products*, the parties created a $35.5 million settlement fund where the attorneys collected $14 million for themselves. 708 F.3d at 169. The district court approved the settlement over the objection that the claims process was so tortuous that the class would not actually collect much, and the settlement's main beneficiary would be a *cy pres* recipient chosen by counsel. *Id.* The Third Circuit reversed: the district court failed to meet its affirmative obligation to consider the class's actual recovery, and the appeals court's own questioning revealed the class received less than $3 million. *Id.* at 170, 174. "[I]f the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information." *Id.* at 174. The failure to do so meant that the district court had failed to consider whether class counsel had "adequately prioritize[d] direct recovery," requiring reversal of settlement approval and the accompanying attorney award. *Id.* at 178.

*Dry Max Pampers*, *Eubank*, and *Baby Products* espouse vital principles that ensure the systematic integrity of class action settlement procedure: there need not be "collusion" for settling parties in a class action to act in their self-interest to create illusory relief to maximize the share of settlement proceeds class counsel receives while minimizing defendant expense, and it's up to a district court to see through that.

If Singh is correct that very few franchisees are actually eligible for account reassignment, then the settlement value is exposed as a mirage. "Cases are better decided on reality than on fiction." *Dry Max Pampers*, 724 F.3d at 721 (internal quotation omitted). This is especially true when adjudicating the rights of thousands or millions of absent class members who rely upon the district court. Thus, "district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank*, 753 F.3d at 723 (internal quotation omitted); *Baby Prods.*, 708 F.3d at 175 (same). That scrutiny includes determining what is real value and what is illusion created to "mask[] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *HP Inkjet*, 716 F.3d at 1179.

True: as the dissent acknowledges, "equitable relief sometimes is not capable of quantitative valuation," 753 F.3d at 932,. But this is no reason to abandon entirely the oversight of non-cash relief, "which is recognized as a prime indicator of suspect settlements" (*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 803 (3d Cir. 1995)) when that relief is quantifiable—especially in purely economic, as opposed to civil rights, cases. Perhaps on remand the parties can demonstrate that the correctly-calculated value of the injunction is (say) $4 million, and the settlement allocation is fair. But we suspect they won't be able to. If Singh's argument failed to show that the settlement benefit was fictitious, appellees had no reason to spend more money fighting to hide that information from the district court and this Court (or to make a settlement payment to Singh), rather than simply disclosing. The only reason

to not argue harmless error in the alternative is because the error wasn't harmless. An adverse inference is appropriate. It is almost certain that "the aggregate value of the settlement to the class" "would be less than the attorneys' fees," meaning "Class counsel sold out the class." *Eubank*, 753 F.3d at 726.

Review is of exceptional importance for another reason. In the past this Court has established ground rules to curb certain abuses regarding the use of injunctive and non-monetary relief. *See Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) (value of injunctive relief is "easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund"; forbidding inclusion of nonquantifiable injunctive relief); *Dennis*, 697 F.3d at 868 (9th Cir. 2012) (promulgating rule that valuation of *cy pres* awards "must be examined with great care to eliminate the possibility that it serves only the self-interests of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious"); *Bluetooth*, 654 F.3d at 944 ("the [Rule 23(e)] standard is not how much money a company spends on purported benefits, but the value of those benefits to the class"); *HP Inkjet*, *supra* (coupon value must be measured by redemption rate). The rule appropriate for this case is a corollary of all those rules: settling parties bear the burden of introducing evidence within their possession and control that is directly relevant to the valuation of the settlement offer. Any other alternative would require class members, who already have insufficient incentive to expend resources to protect themselves through objection, to engage in fishing-expedition discovery in case the parties are exaggerating the value of injunctive relief. That rule implied by the panel opinion rewards settling parties who are abusing the settlement process and may successfully avoid scrutiny by resisting discovery or

disclosure, while imposing additional unnecessary costs on both settling parties who propose meritorious settlements and objectors.

Though the dissent relied heavily on *Pampers*, it was neither distinguished nor even mentioned in the panel opinion. The circuit split with *Baby Products* also went unmentioned. Omitting *Eubank* is understandable, since it issued the day before *Laguna*, but that decision deepens the circuit split caused by the panel opinion. *En banc* review is thus appropriate to reconcile the circuit split.

## II. This Court should grant *en banc* rehearing *sua sponte* notwithstanding the withdrawal of the petition.

Singh withdrew his petition. But *sua sponte en banc* review is possible even in absence of a petition. Ninth Cir. Gen. Order 5.4.c.3; *see also Thompson v. Calderon*, 151 F.3d 918, 922 (9th Cir. 1998) (noting "well-established [principle] that a court of appeals is entitled both to reconsider a prior decision sua sponte, and to order a rehearing sua sponte.") (quoting *Triestman v. United States,* 124 F.3d 361, 367 (2nd Cir. 1997)). *E.g., United States v. Washington*, 593 F.3d 790, 798 n.9 (9th Cir. 2010); *United States v. Brackeen*, 969 F.2d 827, 828 (9th Cir. 1992).

Settling an appeal before the mandate issues is akin to a motion to voluntarily dismiss an appeal under FRAP 42(b). Courts have the discretion to decline to allow a voluntary dismissal "in the interests of justice." *Shellman v. United States Lines, Inc.*, 528 F.2d 675, 678 (9th Cir. 1975). For example, in *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, class attorneys challenging a fee award moved unopposed to dismiss their appeal after oral argument. 743 F.3d 243, 245 (7th Cir. 2014). The court refused: "[J]udicial review of class action settlements is vital at both the trial and

appellate level. We believe that it would be irresponsible to dismiss this case without review. Cases like this one are common and are economically significant. This is an opportunity to provide additional guidance to the district courts." *Id.* at 246 (internal citation omitted). The same is true here, especially when class counsel may be engaging in strategic behavior to manipulate precedent. *Cf. Albers v. Eli Lilly & Co.,* 354 F.3d 644 (7th Cir. 2004) (*per curiam*); *Suntharalinkam v. Keisler,* 506 F.3d 822, 827-29 (9th Cir. 2007) (Kozinski, J., dissenting).

Both the majority and dissenting opinions in *Safeco Ins. Co. of Am., Inc. v. AIG, Inc.,* 710 F.3d 754 (7th Cir. 2013), are also informative. Over Judge Posner's dissent, the *Safeco* majority granted objector Liberty Mutual's motion to dismiss an appeal. But the majority acknowledged that such dismissals may not always be appropriate in the class-action context. While unnamed "members of the class are not technically parties, they have legally enforceable interests" and judges must protect their rights absent explicit consent. *Id.* at 755. The majority explicitly recognized the obligation of the appellate court to "consider[], in the spirit of Rule 23(e), whether this settlement [of the appeal] has any potential to injure nonparticipants." *Id.* at 756.

After doing so, *Safeco* granted the motion, but did so because of two critical factors not applicable here. *First*, Liberty's objection focused on the settlement's treatment of Liberty's claims rather than a global problem with the settlement to the class; Liberty's settlement of its objection (and other litigation with AIG) was more akin to a "belated opt-out." *Id.* at 757. That is not true here, where Singh's objection relates to fairness to the class as a whole. *Second*, in *Safeco*, "[a]ll members of the class are large and sophisticated businesses, many with … legal staffs to protect their

interests" so "there is no prospect of injury to any other class member." *Id.* at 757-58. That is not true in the case of janitorial franchisees—especially those vulnerable enough to be precluded from settlement benefits for failing to pay franchise fees. Thus, even the *Safeco* majority reasoning suggests grounds to refuse to dismiss the appeal here—and Judge Posner would have gone further and not even dismissed the *Safeco* appeal. *Id.* at 758-62. In particular, the dissent was concerned that "AIG is paying Liberty to drop objections to the settlement that, were they accepted, would benefit the class" and thought the court should investigate that side deal. *Id.* at 761. The parties must disclose the settlement with Singh under the August 8 Order, and this Court can determine whether it reflects payment to drop the claims of the class. For example, if Singh were paid by the class counsel, rather than by the defendant, it would tend to show that class counsel is sharing excess rents from their self-dealing.

Courts regularly recognize in analogous circumstances that "a defendant may moot a class action through an offer of settlement only if he satisfies the demands of the class; an offer to one cannot moot the action because it is not an offer to all." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (citing *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975)); *see also id.* at 1087; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 342 n.1 (1980) (Stevens, J., concurring). The same should be true when objectors are paid by class counsel to dismiss a meritorious appeal. *Cf.* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (proposing nonalienability of objector appeals) (cited at OP15).

Should the Court grant *en banc* review and seek briefing and argument, the Court can resolve any such conflict between Singh and the class by appointing *pro bono*

counsel—such as CCAF, which volunteers—as has been done for other unrepresented parties or positions. *E.g.*, *United States v. Kaczynski*, 416 F.3d 971, 977 (9th Cir. 2005); *Preblich v. Battley*, 181 F.3d 1048, 1054 n.5 (9th Cir. 1999); *Kalan v. City of St. Francis*, 274 F.3d 1150, 1152 (7th Cir. 2001).

### III. At a minimum, this Court should vacate the panel opinion.

"Even after an appellate court has issued its decision, if it has not yet issued its mandate and the case becomes moot, the court will vacate its decision and dismiss the appeal as moot." *In re Pattullo*, 271 F.3d 898, 900-01 (9th Cir. 2001).

When the equities otherwise require vacatur, *United States Bancorp Mortg. Co. v. Bonner Mall P'ship* does not preclude vacating precedent just because mootness comes through settlement. 513 U.S. 18, 29 (1994). But even if not vacated because moot, the panel opinion should be vacated because *en banc* review is appropriate to resolve intra- and inter-circuit splits, even if this Court determines that Singh's settlement precludes rehearing. *Cf. generally Animal Legal Def. Fund v. Veneman,* 490 F.3d 725, 726-28 (9th Cir. 2007) (Bybee, J., concurring) (distinguishing *Bonner*).

### Conclusion

The petition for *en banc* review should be granted and the panel decision vacated. If the Court hears reargument, it should appoint *pro bono* counsel for unrepresented class members.

Dated:  August 29, 2014                    Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
Adam E. Schulman
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

Attorneys for *Amicus Curiae*
        Center for Class Action Fairness

**Certificate of Compliance**
**with Fed. R. App. 32(a)(7)(C) and Circuit Rule 29-2**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Circuit Rule 29-2(c)(2) because:

This brief is 15 pages or less, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 and Microsoft Word for Mac 2011 in 14-point Garamond font.

Executed on August 29, 2014.

*/s/ Theodore H. Frank*
Theodore H. Frank

**Proof of Service**

I hereby certify that on August 29, 2014, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

Executed on August 29, 2014.

*/s/ Theodore H. Frank*